UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THOMAS F. McCARTHY,                )  | |
|                                                              ) | |
|            *Plaintiff*                              ) | |
|                                                              ) | |
| v.                                                       ) | Docket No. 05-2-P-H |
|                                                              ) | |
| INHABITANTS OF THE TOWN OF  ) | |
| KENNEBUNKPORT, et al.,             ) | |
|                                                              ) | |
|           *Defendants*                         ) | |

*RECOMMENDED DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT*

The defendants, the Town of Kennebunkport and Brian Shaw, its code enforcement officer, move for summary judgment on Counts III and IV of the complaint, the only remaining active counts.[1] Motion for Summary Judgment of Defendants, etc. ("Defendants' Motion") (Docket No. 19). The plaintiff has moved for summary judgment on "all counts." Opposition of Plaintiff to Motion of Defendants for Summary Judgment, etc. ("Opposition") (Docket No. 25)[2] at 1.[3] I recommend that the court deny the plaintiff's motion and grant the defendants' motion.

**I. Summary Judgment Standard**

**A.  Federal Rule of Civil Procedure 56**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] Counts I and II have been dismissed. Docket No. 10.

[2] The plaintiff filed two documents, his memorandum of law and his statement of material facts, with a single docket number. The documents are not double-spaced, in violation of this court's Local Rule 7(e).

[3] The plaintiff's cross-motion for summary judgment appears only in the body of a document entitled "Opposition of Plaintiff to Motion of Defendants for Summary Judgment, with Affidavit and Incorporated Memorandum of Law." Docket No. 25. This method of presentation does not comply with the intent of Fed. R. Civ. P. 7 and this court's Local Rule 7 that every motion be filed separately. Opposing counsel and the court should not be required to find embedded motions within documents that do not even indicate by their
(*continued on next page*)

56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." *Id.* (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for

---

titles that any such motions are included.

summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*. Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

### B. Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material

3

properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (citations and internal punctuation omitted).

## II. Factual Background

The parties' respective statements of material facts provide the following properly-supported undisputed facts.

The plaintiff is the trustee of the Valeska Family Trust, a Massachusetts trust that owns certain real estate located at 27 Sand Point Road in Kennebunkport, Maine (the "Property"). Statement of Material Facts ("Defendants' SMF") (Docket No. 20) ¶¶ 1-2; Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (included in Docket No. 25) ¶¶ 1-2. In August 2002 the plaintiff made arrangements with a contractor, Jean Boucher, to prepare the Property for repairs. *Id*. ¶ 3. A written agreement drafted by the plaintiff was signed by Boucher and by the plaintiff as agent and power of attorney for Peter Valeska. *Id*. ¶ 4.[4] The agreement included the following description of work to be performed by Boucher:

> 1. Cut all trees on property to ground level with the exception of the three trees (two pine and one evergreen) as designated by customer which will be trimmed in the lower portions as agreed, and haul away trees and all debris;
> 2. Cut, remove and clear all brush from lot and haul away debris, including boards, logs, ladders and other objects on premises as designated; and
> 3. Cover stumps with loam up to two (2") inches.

---

[4] The plaintiff purports to deny this paragraph of the defendants' statement of material facts but the denial does not controvert any of the facts recited in this sentence of my recommended decision. Plaintiff's Responsive SMF ¶ 4.

4

*Id*. ¶ 5. Boucher removed certain vegetation from the Property. *Id*. ¶ 6.

On September 5, 2002 the defendant town issued a Notice of Violation Order for Corrective Action to Peter Valeska, the plaintiff as trustee and Boucher alleging violations of the town's Land Use Ordinance. *Id*. ¶ 7. The town alleged that someone had stripped vegetation, removed trees and done other work on the Property without building permits or planning board approval. *Id*. ¶ 8.[5] The plaintiff appealed the notice and order to the town's zoning board of appeals on September 30, 2002 and November 6, 2002. *Id*. ¶ 9. After hearing, the appeal was denied on January 13, 2003. *Id*. ¶ 10.

On or about February 27, 2003 the plaintiff commenced an action in the Maine Superior Court (York County) pursuant to Rule 80B of the Maine Rules of Civil Procedure seeking review of the January 13, 2003 decision. *Id*. ¶ 11.[6] Judgment was subsequently entered in favor of the town on the Rule 80B claim and a trespass claim against the plaintiff individually; the same claims brought by the plaintiff as trustee of the Valeska Family Trust and the Valeska Realty Trust were dismissed. *Id*. ¶ 13 & Orders on Pending Motions, *Thomas F. McCarthy v. Inhabitants of the Town of Kennebunkport*, Maine Superior Court (York County), Docket No. AP-03-015 (January 23, 2004) (Exh. D to Defendants' SMF) at 1-2. On July 29, 2004 the plaintiff moved to amend his complaint in the state-court action. Defendants' SMF ¶ 15; Plaintiff's Responsive SMF ¶ 15. That motion was denied. *Id.* ¶ 16. The plaintiff then filed an appeal to the Maine Law Court, which he withdrew on December 22, 2004. *Id*. ¶¶ 17-18.

---

[5] The plaintiff denies this paragraph of the defendants' statement of material facts, but only because it states that the plaintiff was alleged to have undertaken the listed activities. Plaintiff's Responsive SMF ¶ 8. Paragraph 14 of the Complaint, cited by both sides in connection with this paragraph, does not identify the individual alleged to have undertaken these activities. Complaint (attached to Docket No. 2) ¶ 14.

[6] The plaintiff purports to deny this paragraph of the defendants' statement of material facts but his denial does not address the facts recited in this sentence of my recommended decision. Plaintiff's Responsive SMF ¶ 11. As he states, *id*., the state-court complaint attached to the defendants' statement of material facts as Exhibit B and cited in support of this paragraph of the defendants' statement of material facts does not support the remaining factual allegations made in that paragraph.

On or about October 27, 2003 the plaintiff made a request to the town for production of documents pursuant to Maine's Freedom of Access law, 1 M.R.S.A. § 401 *et seq*. *Id*. ¶ 19. The town notified the plaintiff that the documents would be made available for inspection and copying at the town offices. *Id*. ¶ 20. The plaintiff and his son, at attorney, scheduled an appointment to review those documents on February 2, 2004. *Id*. ¶ 21. When they arrived at the town offices, the plaintiff and his son were taken by Audrey Williamson, an assistant to defendant Shaw, to a table that had been set up for the review of the documents. *Id*. ¶¶ 22-23.[7] A tape recorder was set up on the table. *Id*. ¶ 23. Prior consent of the plaintiff and his son to record their oral communications was neither sought nor obtained. Plaintiff's Statement of Additional Material Facts ("Plaintiff's SMF") (included in the second document in Docket No. 25, beginning at page 10) ¶ 13; Reply Statement of Facts ("Defendants' Responsive SMF") (Docket No. 27) ¶ 13. When the plaintiff and his son indicated that they did not want to be recorded, the tape recorder was turned off and not turned on again. Defendants' SMF ¶ 26; Plaintiff's Responsive SMF ¶ 26.[8] While the defendants knew that the plaintiff had appeared at the town offices for the specific purpose of obtaining five particular public records as previously agreed upon in writing, no documents or files were made available to the plaintiff on February 2, 2004. Plaintiff's SMF ¶ 14; Defendants' Responsive SMF ¶ 14.

The town was notified by the Maine Department of Environmental Protection that its shoreland zoning map "is not legally in effect." Plaintiff's SMF ¶ 6; Defendants' Responsive SMF ¶ 6. Prior to the issuance of the citation to the plaintiff, the town manager was aware that the town had not officially

---

[7] The plaintiff purports to deny paragraph 23 of the defendants' statement of material facts, but that denial, when the cited portion of the plaintiff's affidavit is consulted, does not deny any of the factual assertions included in this sentence of my recommended decision. Plaintiff's Responsive SMF ¶ 23 & Affidavit of Thomas F. McCarthy ("Plaintiff's Aff.") (Attachment 1 to Certificate of Service filed by the plaintiff on August 4, 2005 (Docket No. 24)) ¶ 10.

[8] The plaintiff purports to deny paragraph 26 of the defendants' statement of material facts by citing to certain lines of the deposition of Audrey Williamson. Plaintiff's Responsive SMF ¶ 26. However, nothing in those lines refutes the factual assertions included in that paragraph of the defendants' statement of material facts, which is supported by the citation given by the defendants.

6

adopted a zoning map. *Id*. ¶ 5. At all relevant times, the town did not have a comprehensive plan approved by the Maine State Planning Office or consistent with state statute. *Id*. ¶ 7.

### III. Discussion

### A. Count III

Count III of the complaint alleges that the defendants violated 15 M.R.S.A. § 709 *et seq*. by unlawfully intercepting oral communications between the plaintiff and his son without their permission on February 2, 2004 during their appearance at town hall in connection with the previously scheduled public records review and thereafter disseminating the substance of those communications without the plaintiff's advanced knowledge and permission. Complaint ¶¶ 23-24. The relevant statutes provide, in pertinent part:

> Any person, other than an employee of a common carrier . . ., a law enforcement officer or an investigative officer . . . who intentionally or knowingly intercepts, attempts to intercept or procures any other person to intercept or attempt to intercept, any wire or oral communication is guilty of a Class C crime.

15 M.R.S.A. § 710(1).

> Any party to a conversation intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses such communications and shall be entitled to recover from any such persons:
>     **1. Damages.** Actual damages, but not less than liquidated damages, computed at the rate of $100 per day for each day of violation; and
>     **2. Attorney's fee.** A reasonable attorney's fee and other litigation disbursements reasonably incurred.

15 M.R.S.A. § 711.

The defendants contend that, because defendant Shaw's assistant Audrey Williamson "was present the entire time that the tape recorder was on," the plaintiff has no claim. Defendants' Motion at 7. The statute at issue defines the term "intercept" as meaning

> to hear, record or aid another to hear or record the contents of any wire or oral communication through the use of any intercepting device by any person other than:
> **A.** The sender or receiver of that communication;
> **B.** A person within the range of normal unaided hearing or subnormal hearing corrected to not better than normal; or
> **C.** A person given prior authority by the sender or receiver.

15 M.R.S.A. § 709 (4). The defendants offered the assertion in their statement of material facts that "Ms. Williamson was present during the entire time the tape recorder was running." Defendants' SMF ¶ 24. The plaintiff denied this paragraph in his response by citing paragraph 12 of his affidavit and further asserting as follows:

> The tape recorder was "running" until the microphone to the same was removed by McCarthy. The Defendant Brian Shaw was not within the range of normal unaided hearing at any time when the taping occurred. Former Assistant CEO Gary Lamb was also present in the room in which the taping occurred outside the hearing distance of the Plaintiff's private conversations.

Plaintiff's Responsive SMF ¶ 24. None of these assertions respond in any way to the assertion made in paragraph 24 of the defendants' statement of material facts. Similarly, paragraph 12 of the plaintiff's affidavit does not dispute that Williamson was present at all times when the tape recorder was running. It states as follows, in its entirety:

> I have read the transcript of the recording submitted by the Defendants to this Court and state that it does not accurately reflect all of my conversations and statements which I subsequently learned were subjected to interception and recording. The recording device was "running" until I personally disconnected the microphone wire from the taping equipment.

Plaintiff's Aff. ¶ 12.

By contrast, the citation to the summary judgment record given by the defendants to support paragraph 24 of their statement of material facts fully supports that paragraph. Affidavit of Audrey Williamson (Docket No. 21) ¶ 7. It is also undisputed that Williamson turned the tape recorder on. Plaintiff's SMF ¶ 13; Defendants' Responsive SMF ¶ 13. *See also* Exh. A to Affidavit of Melissa A.

8

Hewey (Docket No. 29) at [3] ("Memorandum to Veleska File"). If any conversations were recorded at that time to which Williamson was not a party, the undisputed evidence in the summary judgment record establishes that she was the person using the tape recorder and that she was present and thus within normal hearing range at all times during the recording. The plaintiff's own memorandum states that Williamson shut the tape recorder off. Additional Material Facts (included in Defendant's [sic] Opposing Statement of Material Facts (Docket No. 30)) ¶ 45; Reply Statement of Material Facts of Plaintiff (Docket No. 31)[9] ¶ 45.

The plaintiff attempts to avoid the logical conclusion that the taping did not fall within the range of conduct prohibited by 15 M.R.S.A. § 710 by discussing only defendant Shaw as the individual who violated the statute. Opposition at 6. In the absence of any evidence in the plaintiff's responsive or supporting statements of material facts that would allow a reasonable factfinder to conclude that Shaw rather than Williamson was the person who recorded the conversation at issue, this argument fails.

The defendants are entitled to summary judgment on Count III.

### B. Count IV

Count IV alleges that the defendants violated the plaintiff's constitutional rights to equal protection and due process in his role as trustee, citing both the federal and the Maine constitutions. Complaint ¶¶ 25-28. The defendants begin by asserting that the plaintiff's allegations based on the town's alleged use of invalid zoning maps are insufficient to raise a constitutional claim because they could have been resolved through the Rule 80B procedure. Motion at 7-8. The plaintiff does not respond to this argument.

---

[9] Paragraphs 17 and 18 of this document are purported replies to the defendants' responses to those paragraphs of the plaintiff's initial statement of material facts submitted in support of his cross-motion for summary judgment. Such replies are not permitted by Local Rule 56. The plaintiff did not seek leave to file them. They are accordingly stricken.

The First Circuit said, in *Raskiewicz v. Town of New Boston*, 754 F.2d 38, 44 (1st Cir. 1985), that "where . . . the state offers a panoply of administrative and judicial remedies, litigants may not ordinarily obtain federal court review of local zoning and planning disputes by means of 42 U.S.C. § 1983." Section 1983 is the procedural mechanism invoked by the plaintiff in this case. Complaint ¶ 28. In *Raskiewicz*, the plaintiff, who had been denied a permit to remove gravel by the defendant town, alleged, *inter alia*, that the defendants, who included the selectmen and various residents of the town who had intervened in the plaintiff's state-court appeal, had conspired to deprive him of his federal constitutional rights of due process and equal protection. 754 F.2d at 40-43. The First Circuit noted that "[c]harges of bias, bad faith, and other opprobrious epithets of malice . . . are commonplace in cases of this nature." *Id*. at 44 (citation and internal quotation marks omitted). The First Circuit did not decide in that case whether "sufficiently serious, supported[] assertions of this type" could make out a due process claim. *Id*. at 44-45. *Raskiewicz* does not foreclose the plaintiff's constitutional claims on the basis of the availability of the state-court Rule 80B remedy. The same is true of the state case cited by the defendants, *Fisher v. Dame*, 433 A.2d 366 (Me. 1981), in which the Maine Law Court held that "where an avenue to court is provided through a direct appeal in relation to pending administrative proceedings or determinations, that way into court is exclusive," *id*. at 374. The plaintiffs in that case did not raise any constitutional claims. Such claims may be joined with a Rule 80B appeal in the Maine courts, *e.g., Camps Newfound/Owatonna Corp. v. Town of Harrison*, 705 A.2d 1109, 1115 (Me. 1998), but that does not mean that the exclusive means of enforcing constitutional rights in connection with an administrative proceeding before a municipal agency is found in Maine's Rule 80B.

It is not necessary to resolve the question whether the plaintiff's constitutional claims are barred by the existence of the Rule 80B remedy because, even if they are not foreclosed, the plaintiff

10

has not submitted sufficient evidence to proceed on those claims in any event. In his opposition to the defendants' motion on Count IV the plaintiff contends that he has established a claim of selective enforcement as the basis for an equal protection violation. Opposition at 4-6. He makes no attempt to show how a due process claim under either the state or the federal constitution is supported by the summary judgment record,[10] and no such support is apparent to me. Accordingly, the defendants are entitled to summary judgment on any due process claims raised in Count IV.

The plaintiff lists the following as the disparate treatment forming the basis of his constitutional claims: "the requirement, applicable only to him, that he be tape recorded in connection with public records requests, and that his property be subject to trespass, aerial surveillance and aerial photography without permission or consent." Opposition at 6.[11] The plaintiff's proffered evidence of "aerial surveillance," Plaintiff's SMF ¶ 16, is disputed by the defendants, Defendants' Responsive SMF ¶ 16, and his proffered evidence concerning trespass, Plaintiff's SMF ¶ 15, is qualified by the defendants, Defendants' Responsive SMF ¶ 15. The plaintiff offers no evidence that any "requirement" that his review of public records be recorded on audio tape was "applicable only to him." The same is true of the evidence supporting the allegation of trespass in paragraph 15 of the plaintiff's statement of material facts.

The First Circuit has acknowledged that

---

[10] The plaintiff does state, in conclusory fashion, that "the First Circuit has noted that due process claims may survive summary judgment if 'there is [an] issue of fact as to any personal reasons for the . . . permit denials.' *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 47 (1st Cir. 1992)," Opposition at 5, but that passing mention is insufficient to justify any consideration by this court of any argument with respect to due process. In addition, the First Circuit in *Nestor Colon* stated that a due process claim based on an application for a waste disposal permit "must rest on . . . manipulation of the permitting process . . . for some . . . reason [other than retaliation for expressed political views], such as popular opposition . . . ." 964 F.2d at 34, 46. The plaintiff offers no evidence that would allow a reasonable factfinder to conclude what that reason might be in this case, nor does he discuss any such reason. The party opposing summary judgment "may not rely on conclusory allegations and unsupported speculation . . . even when elusive concepts like motive or intent are at issue . . . ." *Burns v. State Police Ass'n of Mass.*, 230 F.3d 8, 9 (1st Cir. 2000) (citation and internal quotation marks omitted).

[11] The parties and the summary judgment record do not make clear how these alleged actions are necessarily related to the denial of the plaintiff's appeal from the notice of violation issued by the town, which was the basis of his Rule 80B state-court appeal.

> [t]he Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where [a] plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 . . . (2000) (per curiam).

*Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 104 (1st Cir. 2002). Accordingly, where the plaintiff has offered no evidence that particular other persons similarly situated were not subjected to the taping "requirement," experienced illegal entry by Shaw onto their property or experienced the taking of aerial "surveillance" photographs of their property by agents for the town, the defendants are entitled to summary judgment on those claims.

The plaintiff's evidence concerning "aerial surveillance" of the property at issue is disputed by the defendants, but even if it were accepted as true, the only evidence offered by the plaintiff on the required element that the treatment of the plaintiff be different from that experienced by others similarly situated is that "[s]uch aerial surveillance and photography has not occurred with respect to other persons." Plaintiff's SMF ¶ 16. "An equal protection claim will only succeed if the decision to treat an individual differently than those similarly situated is wholly arbitrary or irrational." *Wojcik*, 300 F.3d at 104. In the absence of any information about how any other party was similarly situated[12] or of a motive to explain why the defendants would treat him arbitrarily or irrationally, the defendants are entitled to summary judgment on this aspect of the section 1983 claim as well. *Donovan v. City of Haverhill*, 311 F.3d 74, 75, 77 (1st Cir. 2002) (grant of judgment on the pleadings); *Wojcik*, 300 F.3d at 104 (plaintiff must "identify specific evidence concerning similarly situated individuals who received more lenient treatment").

---

[12] To the extent that the plaintiff means to rely on paragraph 18 of his statement of material facts with respect to his equal protection claim, even though it is not mentioned in his memorandum of law, and assuming that the defendants' objection to this paragraph, Defendants' Responsive SMF ¶ 18, were overruled, the statement that "[f]or a proximate and contiguous portion of the same seawall, the Defendant Shaw accepted for filing the Dwelley application for local permit for which all substantive portions of the application were marked N/A or not applicable," Plaintiff's SMF ¶ 18, this factual assertion suffers from the same fatal deficiency.

## IV.  Conclusion

For the foregoing reasons, I recommend that the defendants' motion for summary judgment be **GRANTED** and that the plaintiff's cross-motion for summary judgment be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 8th day of September, 2005.

                                               /s/ David M. Cohen
                                               David M. Cohen
                                               United States Magistrate Judge